Deborah **SCHWIER, Theodore Schwier, and Michael Craig Plaintiffs,**

v.

**Cathy COX, in her official capacity as Secretary of State of Georgia Defendant.**

**No. CIV.A. 1:00CV2820JEC.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 31, 2005.

before expiration of the 120–day period set out by Fed. R. Civ. P. 4(m), had this Court not sent the February 18th notice.

Cristina Correia, Cristina Correia, L.L.C., Avondale Estates, GA, Neil T. Bradley, American Civil Liberties Union Foundation, Atlanta, GA, for Plaintiffs.

Dennis Robert Dunn, Kathryn Lloyd Allen, Stefan Ernst Ritter, Thurbert E. Baker, Office of State Attorney General, Atlanta, GA, for Defendant.

## ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motion for Summary Judgment [48] AND plaintiffs' Motion for Summary Judgment [49]. Plaintiffs have alleged that the State of Georgia's requirement than an applicant for voter registration disclose his social security number violates the federal Privacy Act and Voting Rights Act. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Summary Judgment [48] should be **DENIED** AND plaintiffs' Motion for Summary Judgment [49] should be **GRANTED.**

### BACKGROUND [1]

### I. FACTS

Plaintiffs and defendant have filed cross-motions for summary judgment. The Court draws the facts from Defendant's Statement of Material Facts ("DSMF") [48], Plaintiffs' Response to Defendant's Statement of Material Facts ("DSMF–Resp.") [53], Plaintiffs' Statement of Material Facts ("PSMF") [49], and Defendant's Response to Plaintiffs' Statement of Material Facts ("PSMF–Resp.") [51].

Plaintiffs Deborah Schwier and Theodore Schwier are residents of Walton County, Georgia. (DSMF at ¶ 1.) Plaintiff Michael Craig is a resident of Gwinnett County, Georgia. (Id. at ¶ 6.) All plaintiffs refused to provide their social security numbers to their respective counties on their voter registration applications. (Id. at ¶¶ 4, 8.) The Schwiers received a letter from Walton County stating that failure to provide their social security numbers within thirty days would result in the rejection

---

1. For a complete accounting of the facts, see this Court's Order of May 14, 2002[35].

of their applications. (*Id.* at ¶ 5.) Gwinnett County notified plaintiff Craig that his application would be rejected if he did not provide his social security number ("SSN"). (*Id.* at ¶ 9.) The counties thereafter rejected plaintiffs' voter registration applications. (PSMF at ¶ 2.) The Schwiers[2] asked the Court for a preliminary injunction [3] so that they could register and vote in the November 2000 election. (May 14, 2002 Order [35] at 2.) The Court granted that motion, in part, on the condition that the Schwiers provide their SSNs to the Court under seal; the Schwiers did so and were permitted to vote. (*Id.*)

### A. Voter Registration Cards

Section 34–609 governed the form of the voter registration cards used prior to 1975. The form contained a space for the applicant to write in his SSN, "if known at the time of the application." Ga.Code Ann. § 34–609. (*See also* PSMF at ¶ 3.) This language remained on the registration form until 1995,[3] at which time it was deleted. (PSMF at ¶ 4.)

Defendant, as the Secretary of State, specifies the form of the current state voter registration card. (PSMF at ¶ 6 (citing O.C.G.A. § 21–2–219 and 220).) Only registration cards issued or authorized for use by defendant—or the national voter registration card—may be used. O.C.G.A. § 21–2–219. Defendant is consulted on and approves the instructions contained on the national voter registration form. (PSMF at ¶ 7.)

### B. Enforcement of the Request for SSNs Prior to the 1995 Law Changes

During the course of this lawsuit, defendant surveyed county registration officials to determine how each county enforced the request for SSNs prior to the 1995 law changes. (PSMF at ¶ 9.) Twenty-four (24) counties refused registration if the applicant knew his SSN but did not provide it. (*Id.*) Twenty-six (26) counties registered individuals without their SSN, but the registrar made attempts to later obtain the information. (*Id.*) Finally, 28 counties did not require SSNs at all. (*Id.*)

The Schwiers are residents of Walton County and Craig is a resident of Gwinnett County. (DSMF at ¶¶ 1, 6.) Walton County enforced the request for an applicant's SSN by sending an applicant who submitted his application without disclosing his SSN a letter, along with a copy of the Attorney General's opinion 76–6,[4] requesting the information. (Br. in Supp. of Def.'s Renewed Mot. for Summ. J., "Def.'s Br." [48] at 16–17 (quoting Walton County Chief Registrar Connell Aff. at ¶ 3).) The application was placed in a hold file and if the Registrar's Office did not hear from the applicant after thirty days, the Registrar's Office rejected the application. (*Id.* at 17 (quoting Walton County Chief Registrar Connell Aff. at ¶ 3).) In Gwinnett County, the Registrar's Office would accept a voter application if the applicant did not know his, or did not have, a social security number. (DSMF–Resp. at ¶ 11

---

2. At that time, Mr. Craig was not a party to this lawsuit. It was not until February 20, 2001, that the Schwiers filed an Amended Complaint [16] adding Mr. Craig as an additional plaintiff.

3. In 1995, the Georgia General Assembly amended Title 21 of the Official Code of Georgia—the title governing elections—to comply with the National Voter Registration Act of 1993.

4. The Secretary of State requested that the Attorney General examine the Privacy Act to determine what effect, if any, it had on Georgia's Election Code. The Attorney General issued Opinion 76–6, in which he concluded that Georgia had been requesting SSNs as part of a system of records prior to January 1, 1975, thus excepting it from the disclosure prohibition found in section 7 of the Privacy Act.

(quoting Gwinnett County Chief Registrar Lyons Aff.).)

## C. Statewide System of Records

In 1995, as part of the changes to the election laws, Georgia began keeping statewide voter registration data. (PSMF at ¶ 5.) Defendant clarifies that while there was data available prior to the statutory change, there was no centralized voter registration data prior to this time. (PSMF–Resp. at ¶ 5.) When Georgia adopted this statewide system, over 400,-000 registrants' files did not include a SSN. (PSMF at ¶ 10.)

In an effort to obtain the missing SSNs, defendant contracted with Equifax, who was to provide the missing information. (*Id.* at ¶ 11.) This contract provided that defendant could not sell, license, copy, or transfer the SSNs provided by Equifax. (*Id.* (citing Social Security Number Addendum to Service Agreement, attach. as Ex. 6 to Pls.' Mot. for Summ. J. [49], at 7).) The contract contained no equivalent requirements of confidentiality as to the SSNs defendant disclosed to Equifax. · (*Id.* at ¶ 12.)

## II. PROCEDURAL HISTORY

This case was previously before the Court on cross-motions for summary judgment. The Court granted defendant's motion and denied plaintiffs' motion, finding that plaintiffs could not bring a private right of action under 42 U.S.C. § 1983 (" § 1983") for violations of section 7 of the Privacy Act or section 1971 of the Voting Rights Act. (May 14, 2002 Order [35] at 18, 19.) Plaintiffs appealed and the Eleventh Circuit reversed, holding that the rights conferred by section 7 of the Privacy Act and section 1971 of the Voting Rights Act may be enforced by a private right of action under § 1983. *Schwier v. Cox*, 340 F.3d 1284, 1292–93, 1296–97 (11th Cir. 2003). The Circuit Court remanded the following issues: (1) whether Georgia qual-ifies for the "grandfather" exception of the Privacy Act; (2) whether Georgia's voter registration forms comply with the notice requirements of section 7(b) of the Privacy Act; and (3) whether disclosure of a person's social security number is "material" in determining whether the person is qualified to vote under Georgia law. *Id.* at 1293–94, 1297.

Now pending before the Court are the parties' cross-motions for summary judgment on the three issues remanded by the Circuit Court.

## DISCUSSION

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir.1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support

the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence [5] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. THE PRIVACY ACT OF 1974

### A. Does Georgia Qualify for the "Grandfather" Exception of the Privacy Act?

Section 7(a) of the Privacy Act makes it unlawful for any "state or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." Pub.L. 93–579, 88 Stat. 1896 (1974), 5 U.S.C. § 552a (note). In this case, it is undisputed that defendant rejected plaintiffs' voter registration applications because they refused to disclose their SSNs. It would seem, then, that defendant has violated Section 7(a) of the Privacy Act. However, a state or local agency may require disclosure of one's SSN, consistent with the Privacy Act, if the state or local agency "maintain[s] a system of records [that was] in existence and operating before January 1, 1975, [and] such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual." Pub.L. 93–579, 88 Stat. 1896 (1974), 5 U.S.C. § 552a (note). If Georgia qualifies for this exception, then, it may require voter applicants to disclose their SSNs without being in violation of the Privacy Act.

In order to qualify for this exception, "Georgia must show that it meets two criteria: (1) that it maintained a system of records operating before January 1, 1975; and (2) that the system required the disclosure of an individual's [SSN] to verify the identity of that individual." *Schwier*, 340 F.3d at 1293. The Eleventh Circuit remanded the issue of whether Georgia

---

**5.** The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

qualifies for this "grandfather" exception. *Id.*

The burden is on defendant to establish that Georgia qualifies for the "grandfather" exception. *N.L.R.B. v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 711, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001) (burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on the one who claims its benefits) (internal quotation and citation omitted). Since defendant bears the burden of proof, she must make a showing sufficient to establish the existence of every element of the "grandfather" exception in order to survive plaintiffs' motion for summary judgment. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. All plaintiffs must do is show the Court that there is an absence of evidence to support defendant's claim. *Id.* at 325, 106 S.Ct. 2548.

Defendant argues that Georgia is exempt from section 7(a)(1) and qualifies for the "grandfather" exception because prior to 1975, "local governments in Georgia collected voter registration information and in the specific Georgia counties potentially relevant to the Plaintiffs—Walton and Gwinnett—SSNs were required." (Def.'s Br. at 8–9.) Plaintiffs argue that Georgia does not qualify for the exception because Georgia did not have a statewide system in place and operating prior to January 1, 1975, that required potential voters to supply their SSNs. (Pls.' Resp. to Def.'s Renewed Mot. for Summ. J., "Pls.' Resp.," [52] at 3–4.)

### 1. Has Defendant Shown that Georgia Maintained a System of Records Operating before January 1, 1975?

The 1964 Georgia Election Code required that registrars be given monthly lists of those disqualified from voting. Ga. Code Ann. § 34–621. Specifically, the clerk of the superior court was to provide a list of those who had been convicted of a crime, the ordinary was to provide a list of those who had been adjudicated idiots or insane, and the local registrar of statistics was to provide a list of persons who had died. *Id.* Each registrar was to then compile a complete list of the electors for his county; this last was to be completed no later than the registration deadline. Ga. Code Ann. § 34–622. In compiling this list, the registrars were instructed to examine the lists of disqualified persons. *Id.* Within three (3) days of completing the list of electors, each registrar was to then file the list with the clerk of the superior court of the county and the Secretary of State. Ga.Code Ann. § 34–623. Defendant essentially argues that these lists, submitted to the Secretary of State, constitute a system of records for purposes of the "grandfather" exception to the Privacy Act. (Def.'s Br. at 10–11 (citing Ga.Code Ann. § 34–621).)

Plaintiffs argue that no statewide system was in place prior to January 1, 1975. (Pls.' Resp. at 5–9; Br. in Supp. of Pls.' Mot. for Summ. J., "Pls.' Br.," [49] at 12–14.) Plaintiffs rely on defendant's previously submitted evidence to show that prior to 1975, voter registration practices varied among Georgia counties, with a majority of counties not requiring SSNs for voter registration. (Pls.' Resp. at 5 (citing Table of Counties, attach. as Ex. 4 to Pls.' Mot. for Summ. J. [49] and Amendment to Ex. 2 of Def.'s Mot. for Summ. J. [31]).) Defendant's survey of counties, asking how they enforced the registration form prior to 1995, produced the following results: 24 counties refused registration if the SSN was known but not provided; 26 counties registered individuals without their SSN, but the registrar made attempts to later obtain the information; and 28 counties did not require SSNs at all. (Pls.' Br. at 13–14 (citing Table of

Counties, attach. as Ex. 4 to Pls.' Mot. for Summ. J. [49] and Amendment to Ex. 2 of Def.'s Mot. for Summ. J. [31] ).) Plaintiffs also rely on defendant's prior concession that the former standards "were not uniform." (*Id.* (citing PSMF at ¶ 8).) Defendant admits that there was no centralized system in place prior to 1995. (PSMF-Resp. at ¶ 5.) Plaintiffs also argue that since the counties varied on their practices regarding whether applicants disclosed their SSNs, there could not have been a system of records. (Pls.' Resp. at 6–7.)

There is no dispute that the counties, prior to January 1, 1975, maintained a system of records. The Georgia law on elections, in effect at this time, required the monthly generation of various lists of disqualified persons. Each registrar sent a complete list of the county's electors to the Secretary of State every even-numbered year.[6] Ga.Code Ann. § 34–623. Based on this evidence, the Court concludes that a reasonable jury could find that Georgia did maintain a system of records. The Court must therefore turn its attention to the question of whether this system of records required one to disclose his SSN to verify his identity before allowing him to register to vote.

### 2. Has Defendant Shown that the System Required an Individual to Disclose His SSN to Verify His Identity?

██ Having concluded that a reasonable jury could find that there was a system of records operating prior to January 1, 1975, the Court must now determine whether defendant has produced sufficient evidence to establish that the system required an individual to disclose his SSN *and* that such disclosure was to verify the individual's identity. If the Court concludes that defendant failed to produce sufficient evidence as to the former, it need not address the latter.

Defendant argues that the system in place prior to January 1, 1975, required the disclosure of one's SSN in order to register to vote. (Def.'s Br. at 9–10.) She argues that in order to vote, one must have " 'registered as an elector in the manner prescribed by law.' " (*Id.* at 9 (quoting Ga.Code Ann. § 34–602).) To register, one was to apply to the registrar or supply the registrar with information that would enable him to "fill in all of the blanks appearing on the registration card." Ga. Code Ann. § 34–612. As discussed *supra,* prior to 1975, the form of the voter registration card was governed by statute. The form included a space for the applicant to write in his SSN. Ga.Code Ann. § 34–609. (*See also* Def.'s Br. at 10.) Section 34–614 provided that an applicant's failure "to disclose information sought by a direct question of the registration officers in connection with the taking of the application . . . shall result in the application being rejected." Therefore, according to defendant, since the registration form asked for the applicant's SSN and failure to disclose information requested resulted in the application being rejected, Georgia required the applicant's SSN for voter registration. (Def.'s Br. at 10.)

---

**6.** Defendant argues that since the counties maintained these lists prior to January 1, 1975, and since the Privacy Act speaks to local governments, then the State of Georgia can essentially latch on to the counties' systems and claim to have had a system of records in operation prior to January 1, 1975. (Def.'s Reply [59] at 4.) The plain language of the Privacy Act extends the coverage of the "grandfather" exception to systems of records maintained by local agencies, Pub.L. 93–579, 88 Stat. 1896 (1974), 5 U.S.C. § 552a (note). Nonetheless, the Court does not have to reach the question whether the State may aggregate the counties' records in this way, as the Court finds that the State had a system of records in place prior to January 1, 1975.

Plaintiffs argue that disclosure of one's SSN was not required to register to vote under the system in place prior to January 1, 1975. (Pls.' Resp. at 3.) According to plaintiffs, disclosure of one's SSN was not required either in practice—as more counties allowed registration without such disclosure than required disclosure—or by law—since only those who knew their SSN at the time of application were required to disclose it. (*Id.* at 10.)

As a practical matter, plaintiffs contend, disclosure of one's SSN was not required for one to register to vote. (*Id.* at 3, 5, 10.) Prior to January 1, 1975, more counties did not require disclosure of one's SSN for voter registration than did so require. (*Id.* at 5 (citing Table of Counties, attach. as Ex. 4 to Pls.' Mot. for Summ. J. [49] and Amendment to Ex. 2 of Def.'s Mot. for Summ. J. [31]).) As late as 1997, approximately 10% of the voting population—450,000 people—were registered, but had no SSN in their voter file. (*Id.* at 10.) Approximately 250,000 of this 400,000 had a SSN. (*Id.*)

Plaintiffs also argue that disclosure of one's SSN was not required by law, as the registration form used prior to January 1, 1975, stated, after the blank for the SSN, "if known at the time of application." (*Id.* at 4.) Relying on a footnote in the Eleventh Circuit's opinion, plaintiffs argue that this language meant that disclosure of one's SSN was not required generally but was required only if it was known to the applicant at the time of the application. (*Id.* at 4, 10 (citing *Schwier*, 340 F.3d at 1293 n. 6).) Plaintiffs also argue that if disclosure was required, meaning that disclosure was an actual prerequisite to voter registration, then the language "if known

at the time of application" was superfluous. (Pls.' Br. at 9.)

The Court agrees with plaintiffs. While some counties can be said to have required the disclosure of one's SSN prior to accepting that person's voter registration application, the same cannot be said regarding the Georgia voter registration system as a whole. Defendant received survey responses [7] from 141—all but 18—of Georgia's counties. (Pls.' Br. at 13.) Only 24 counties within the State required voter applicants to disclose their SSNs in order to register. (*Id.* (citing Table of Counties, attach. as Ex. 4 to Pls.' Mot. for Summ. J. [49] and Amendment to Ex. 2 of Def.'s Mot. for Summ. J. [31]).) Twenty-eight counties did not require SSNs at all. (*Id.* at 14 (citing Table of Counties, attach. as Ex. 4 to Pls.' Mot. for Summ. J. [49] and Amendment to Ex. 2 of Def.'s Mot. for Summ. J. [31]).) The Court cannot say that Georgia required disclosure of one's SSN for voter registration based on the fact that only 24 counties—out of 159—required such disclosure.

Moreover, the form itself compels the conclusion that disclosure of one's SSN was not required. The form contained a blank for the applicant's SSN; this blank was followed by the language "if known at the time of application." Ga.Code Ann. § 34–609. Not all applicants were required to disclose their SSNs in order to register to vote. Rather, only the applicant who knew his SSN at the time he applied for voter registration was required, by the terms of the form, to disclose his SSN. Prior to January 1, 1975, this requirement, by its own terms, applied to only some of the potential electorate and

---

7. Sixty-three of the counties responding to the survey either did not answer the question regarding pre–1995 voter registration practices, had no personal knowledge of the practices prior to 1995, or provided an ambiguous answer. (Table of Counties, attach. as Ex. 4 to Pls.' Mot. for Summ. J. [49] and Amendment to Ex. 2 of Def.'s Mot. for Summ. J. [31]).

the Court will not now read it to have applied to the entire electorate.

Defendant relies on *McKay v. Thompson*, 226 F.3d 752 (6th Cir.2000) and *McKay v. Altobello*, No. CIV. A. 96–3458; 1997 WL 266717 (E.D.La. May 16, 1997), neither of which compel a different conclusion. (Def.'s Br. at 12–14.) The court in *McKay v. Altobello* found that Louisiana had no system of records in effect and operating prior to January 1, 1975, and that even if such a system had been in operation, there was no requirement that one disclose his SSN on his voter registration application. *McKay v. Altobello*, No. CIV. A. 96–3458, 1997 Westlaw 266717, at *2 (E.D.La. May 16, 1997). The court also noted that the form used in Louisiana prior to January 1, 1975, had a blank space for one's SSN, but there was no state law indicating that it was mandatory to complete every space in order to have one's voter application accepted. *Id.* The Sixth Circuit, in *McKay v. Thompson*, noted that the district court properly distinguished Mr. McKay's other case—*McKay v. Altobello*-on the grounds that Tennessee, unlike Louisiana, maintained a system of records prior to January 1, 1975 that required disclosure of SSNs. 226 F.3d at 755. The court declined to reach the merits of McKay's claim, though, as he had failed to respond to defendants' motion for summary judgment. *Id.* Since *Altobello* involved a state that had not maintained a system of records prior to January 1, 1975, and the *Thompson* court did not address the merits of the claim, the Court fails to see how either case affirmatively supports defendant's position.

Finally, the Court understands defendant's genuine need for the disclosure of SSNs for voter registrants in order to help prevent voter fraud. Yet, consistent with

the order of remand by the Eleventh Circuit, this Court cannot allow that which the Privacy Act prohibits, no matter how great the need may seem to be.

Plaintiffs correctly indicate that Congress has made some exceptions to the Privacy Act, allowing states to require disclosure of one's SSN before receiving some benefit. (Pls.' Br. at 6 n. 1) (citing exceptions for jury selection lists, 42 U.S.C. § 405(c)(2)(E), driver's licenses and motor vehicle registration, 42 U.S.C. § 402(c)(2)(C)(I), and various other licenses, such as professional and occupational licenses, 42 U.S.C. § 666(a)(13) and (16).) Congress has not made such an exception for voter registration. Likely, in 1974 perceived problems with voter fraud were not present to the extent that they are today. Accordingly, the ball is in Congress' court. If it wishes to provide the states with a means to help forestall voter fraud and to insure that the applicant for voter registration is who he or she claims to be and is an American citizen, it will need to amend the Privacy Act to accomplish that purpose.[8]

In summary, the voter registration applications of plaintiffs were rejected because they did not disclose their SSNs. Such a denial of the right to register to vote can be consistent with the Privacy Act only if Georgia qualifies for the "grandfather" exception provided for in the Act. As the Court has concluded that Georgia does not qualify for this exception, the Court must also conclude that defendant violated the Privacy Act by conditioning the acceptance of plaintiffs' voter registration applications on the disclosure of their SSNs. Accordingly, the Court **DENIES** defendant's motion for summary judgment as to this claim and **GRANTS** plaintiffs' motion for summary judgment as to this claim.

---

8. Whether disclosure of a social security number, by itself, would serve this purpose is uncertain unless the State would be permitted to cross-check the name and social security number with federal officials.

**B. Do Georgia's Voter Registration Forms Comply with the Notice Requirements of Section 7(b) of the Privacy Act?**

■ In relevant part, section 7(b) of the Privacy Act requires that any state or local government agency "which requests an individual to disclose his social security account number [ ] inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it." Pub.L. 93–579, 88 Stat. 1896 (1974), 5 U.S.C. § 552a (note).

The current form published by Georgia provides that "Social Security Number is required by O.C.G.A. § 21–2–219 and 21–2–220. SSN is confidential by O.C.G.A. § 21–2–225 and is used only to verify the identity of voters." (State of Georgia Application for Voter Registration, attach. as Ex. 2 to Pls.' Mot. for Summ. J. [49].) The directions in the national voter registration form state that "[y]our full social security number is required. Your social security number will remain confidential and will not be disclosed except as required by law. The number will be used to identify and verify the identity of voters (Georgia Election Code, O.C.G.A. Ch. 21–2–219, 21–2–220, 21–2–225)." (National Motor Voter Registration Form, attach. as Ex. 3 to Pls.' Mot. for Summ. J. [49], at 8.)

Plaintiffs claim that forms used by Georgia violate section 7(b) because the confidentiality promise is incomplete or inaccurate; not all uses of the SSNs are stated; and applicants are not informed that the request for SSNs is a choice of defendant.[9] Defendant argues that since the state registration form has been modified [10] during the course of the litigation, plaintiffs' original section 7(b) claims have been mooted and plaintiffs' new claim of unlawful sharing is without merit.

Although not directly argued by the parties, the Court must address the fact that the forms, as currently written, inform the voter applicant that his SSN is "required." (State of Georgia Application for Voter Registration, attach. as Ex. 2 to Pls.' Mot. for Summ. J. [49] ) ("Social Security Number is *required* ") (emphasis added); National Motor Voter Registration Form, attach. as Ex. 3 to Pls.' Mot. for Summ. J. [49], at 8 ("Your full social security number is *required.* ") (emphasis added). As the Court has determined that Georgia does not qualify for the "grandfather" exception, Georgia's voter registration forms cannot instruct applicants that disclosure of their SSNs is mandatory, i.e., required. The forms may request such disclosure, but the request must indicate that disclosure is voluntary. Pub.L. 93–579, 88 Stat.

9. As evidence that the confidentiality promised in the voter registration forms is incomplete or inaccurate, plaintiffs point to the fact that defendant disclosed the SSNs of registered voters to Equifax, as part of an internal audit. (Pls.' Br. at 21–22.) The contract between defendant and Equifax prohibited the former from using the SSNs provided by the latter, but did not prohibit Equifax from otherwise using the SSNs provided by defendant. (Social Security Number Addendum to Service Agreement, attach. as Ex. 6 to Pls.' Mot. for Summ. J. [49], at 7.)

The Court agrees with plaintiffs that section 7(b) requires that applicants be informed as to how defendant will use their SSNs. The Court directs defendant to revise the voter registration forms and instructions so as to comply with section 7(b). The Court does not understand plaintiffs to be asking for any additional relief as to this claim.

10. The former form stated that one's SSN was **required**, but that, by law, the number would be kept confidential and used for internal purposes only. (State of Georgia Application for Voter Registration, attach. as Ex. A to Skinner Aff., attach. to Def.'s Renewed Mot. for Summ. J. [48] (emphasis original).)

1896 (1974), 5 U.S.C. § 552a (note). Because the current forms state that disclosure of one's SSN is required and because the Court has already determined that defendant cannot require such disclosure, the forms in use violate section 7(b) of the Privacy Act. Accordingly, the Court **DENIES** defendant's motion for summary judgment that the forms do not violate section 7(b) and **GRANTS** plaintiffs' motion for summary judgment on this claim.

Now that Georgia cannot condition voter registration on the disclosure of one's SSN, defendant must decide whether to request such disclosure on a voluntary basis in its redrafted forms. If defendant so decides, she must consider the language of section 7(b) in drafting the new forms and instructions. For example, the forms must reflect the fact that disclosure of one's SSN is indeed voluntary. Pub.L. 93–579, 88 Stat. 1896 (1974), 5 U.S.C. § 552a (note). The forms must also indicate under what authority—whether statutory or otherwise—such disclosure is sought. Finally, all uses contemplated for the SSNs must be disclosed. Plaintiffs here argue that the current forms neglect to inform voter applicants that other state agencies may have access to their SSNs. (Pls.' Br. at 20–22.) In redrafting, defendant may consider a more detailed instruction, such as that if the SSN is provided, it will remain confidential and subject to disclosure only · as provided for in O.C.G.A. § 21–2–225. The Court leaves the responsibility for redrafting the forms and their instructions to defendant. O.C.G.A. §§ 21–2–219, 21–2–220.

### III. IS DISCLOSURE OF A PERSON'S SOCIAL SECURITY NUMBER "MATERIAL" IN DETERMINING WHETHER THE PERSON IS QUALIFIED TO VOTE UNDER GEORGIA LAW?

■ Plaintiffs also argue that defendant violated the Voting Rights Act, 42 U.S.C. § 1971(a)(2)(B), in denying plaintiffs the right to register to vote for failing to provide their SSNs. Section 1971 provides that

No person acting under color of law shall deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

42 U.S.C.A. § 1971(a)(2)(B). Plaintiffs argue that an individual is qualified to vote under Georgia law if he is a United States citizen, a Georgia resident, at least 18 years of age, not incompetent, and not a felon. (Pls.' Br. at 16 (citing *Schwier,* 340 F.3d at 1297; O.C.G.A. § 21–2–216).) Therefore, according to plaintiffs, disclosing one's SSN-or even having an SSN-is not material in determining whether one is qualified to vote under Georgia law. (*Id.*) Defendant argues that SSNs are material because they help prevent registering and voting fraud. (Def.'s Br. at 20.) As noted, the Court agrees with defendant that requiring disclosure of a registrant's SSN could help to prevent voter fraud. Yet, disclosing one's SSN cannot be material in determining whether that person is qualified to vote under Georgia law, if Georgia is not permitted to require this disclosure. Georgia cannot, consistent with the Privacy Act, mandate that one registering to vote disclose his SSN. Georgia, therefore, cannot deny a voter applicant the right to vote because that person declined to disclose information—his SSN-the State cannot require. The Court concludes that defendant did in fact violate the Voting Rights Act in denying plaintiffs the right to register to vote because they refused to disclose their SSNs. Accordingly, the Court **DENIES** defendant's motion for

summary judgment and **GRANTS** plaintiffs' motion for summary judgment.

### *CONCLUSION*

For the foregoing reasons, the Court **DENIES** defendant's Motion for Summary Judgment [48] AND **GRANTS** plaintiffs' Motion for Summary Judgment [49].