FLORIDA KEY DEER,
et al., Plaintiffs,

v.

Michael D. BROWN, et al., Defendants.

No. 90–10037–CIV–MOORE.

United States District Court,
S.D. Florida.

Sept. 12, 2005.

John F. Kostyack, Mary Randolph Sargent, National Wildlife Federation, Washington, DC, Henry Lee Morgenstern, Ramrod Key, FL, David J. White, St. Petersburg, FL, for Plaintiff.

Mark A. Brown, Senior Trial Attorney, Wildlife & Marine Resources Section, Environment & Natural Resources Div., U.S. Department of Justice, Benjamin Franklin Station, Washington, DC, Teresa J. Davenport, Assistant U.S. Attorney, Miami, FL, for Defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiffs' Motion for a Permanent Injunction (DE # 219).

UPON CONSIDERATION of the Motion, the Response, and the pertinent portions of the record, the Court enters the following Order.

## I. BACKGROUND

### A. Parties

Plaintiffs, the National Wildlife Federation, Florida Wildlife Federation, and Defenders of Wildlife, brought this action pursuant to the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA") on behalf of eight endangered and threatened species of the Florida Keys: the Key Largo cotton mouse, Key Deer, Key Largo woodrat, Lower Keys marsh rabbit, Schaus' swallowtail butterfly, silver rice rat, Stock Island tree snail and Key tree-cactus.[1] Defendants are Michael Brown, in his official capacity as the Undersecretary of Emergency Preparedness and Response for the Department of Homeland Security, which includes the Federal Emergency Management Agency ("FEMA") and Gale Norton, in her official capacity as Secretary of the United States Department of the Interior, which includes the Fish and Wildlife Service ("FWS").

### B. Procedural History

Plaintiffs filed this action in 1990, seeking to compel FEMA to enter into ESA consultation with FWS concerning FEMA's administration of the National Flood Insurance Program ("NFIP") in the Florida Keys. Following a bench trial, on August 24, 1994, the undersigned directed

FEMA to consult with FWS in accordance with its duties under 16 U.S.C. § 1536(a)(2)("ESA § 7(a)(2)"). *Florida Key Deer v. Stickney*, 864 F.Supp. 1222 (S.D.Fla.1994). As a result of that consultation, FWS determined, in its 1997 Biological Opinion ("1997 BO"), that FEMA's administration of the NFIP within the Florida Keys was jeopardizing the Key Deer, Key Largo cotton mouse, Key Largo woodrat, Key tree-cactus, Lower Keys marsh rabbit, Schaus' swallowtail butterfly, silver rice rat, Garber's Sponge and Stock Island tree snail. As required by 16 U.S.C. § 1536(b)(3)(A), FWS proposed reasonable and prudent alternatives ("RPAs") which it concluded would eliminate jeopardy to these species and allow FEMA to continue implementing the NFIP in the Florida Keys. FEMA adopted the 1997 RPAs recommended by FWS as its plan for avoiding jeopardy. Plaintiffs filed an Amended Complaint in 1997 (DE # 119), claiming that the BO and accompanying RPAs recommended by FWS, and implemented by FEMA, violated both the ESA and APA.

Subsequently, in 2003, FWS and FEMA re-initiated the consultation process.[2] As a result of this re-initiation, FWS issued an amended BO ("2003 BO"). Like the 1997 BO, the 2003 BO concluded that FEMA's administration of the NFIP in the Florida Keys was jeopardizing the same species as those listed in the 1997 BO, with the exception of the Garber's Sponge ("Listed Species"). As required by law, the 2003 BO included RPAs which

---

1. With the exception of the Key tree-cactus and Schaus' swallowtail butterfly, all of the species are endemic to the Florida Keys.

2. The 1997 BO contained a re-initiation clause which required FEMA to re-initiate

consultation if Monroe County did not complete a habitat recovery plan within four years. FWS A.R. # 20 at 5.5. Because Monroe County failed to complete a plan, FEMA re-initiated consultation as required.

FEMA again adopted ("2003 RPAs").[3] Plaintiffs then filed a Second Amended Complaint (DE # 187) in 2003 challenging the sufficiency of the 2003 BO and the 2003 RPAs.

On March 29, 2005, the Court granted Plaintiffs' Motion for Summary Judgment ("March 29, 2005 Order"). Specifically, the Court held: (1) that FWS's preparation of the 2003 BO was arbitrary, capricious or otherwise not in accordance with the law; (2) that the 2003 RPAs failed to protect against jeopardy; (3) that FEMA's failure to engage in any independent analysis of the sufficiency of the 2003 BO and 2003 RPAs was arbitrary, capricious or otherwise not in accordance with the law; and (4) that FEMA was in violation of ESA § 7(a)(1) for failing to develop and implement a conservation program for the Listed Species.

Plaintiffs now move for a permanent injunction to enjoin FEMA from issuing flood insurance for any new development in the suitable habitats of the Listed Species in Monroe County, Florida, until such time as the Court concludes that Defendants have complied with the requirements of the ESA and the APA.[4] In addition, Plaintiffs request that the Court retain jurisdiction over the case until such time as the Court concludes that Defendants have complied with the March 29 Order. Finally, Plaintiffs request that the Court remand the action to Defendants to prepare a new BO and issue new RPAs consistent with requirements of the ESA, APA, and the March 29, Order, within nine months.

Defendants have agreed to re-initiate consultation in light of the March 29, 2005 Order. In addition, Defendants do not contest Plaintiffs' request that the Court retain jurisdiction over the case until such time as the Court concludes that Defendants have complied with the March 29, 2005 Order. Therefore, the only issue left to be resolved is Plaintiffs' Motion for a Permanent Injunction, which Defendants have opposed.

## II. STANDARD FOR A PERMANENT INJUNCTION

 Generally, in order to be entitled to a permanent injunction, a plaintiff must show: (1) success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff will outweigh any threatened harm the injunction may do to defendant; and (4) granting the permanent injunction will not disserve the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000); *Clark Const. Co., Inc. v. Pena*, 930 F.Supp. 1470, 1477 (M.D.Ala.1996).

However, in cases involving the ESA, the standard is different. Specifically, the third and fourth prongs of the injunction analysis have been foreclosed by Congress. *See TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). As the Supreme Court held in *TVA*, "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered

---

**3.** Plaintiffs contend, and Defendants do not dispute, that the 2003 RPAs are materially identical to the 1997 RPAs. Def. Mot. For Summ. J. at 1. (FWS reaffirmed the RPA, and FEMA has elected to continue implementing the RPA).

**4.** Plaintiffs define new development as "any residential or commercial development where construction of the structure has yet to begin." Pl. Mem. at 2.

species the highest of priorities ....” *See also Strahan v. Coxe,* 127 F.3d 155, 160 (9th Cir.1997) (holding that “the balancing and public interest prongs have been answered by Congress’ determination that the balance of hardships and the public interest tips heavily in favor of protected species.”); *Leatherback Sea Turtle v. Flagler County Bd. of County Com’rs,* 359 F.Supp.2d 1209, 1212 (M.D.Fla.2004)(finding that, given the monumental and important aims of the ESA, Congress effectively removed from the courts their traditional equitable discretion in injunction proceedings). Similarly, this Court found in the 1994 Order that:

> “precedent in this Circuit clearly supports the congressional intent that the balance of the equities should favor an endangered species whenever the [ESA] has been violated.... Injunctive relief serves the public interest where it furthers that clearly-expressed purpose of a statute, as in the present [ESA] case ...”

Defendants appear to agree that the third prong of the injunction analysis has been foreclosed in ESA cases. Def. Mem. at 3. However, Defendants argue that the public interest prong has not been foreclosed in ESA cases, and that entering an injunction in this case would disserve the public interest. Id. at 19. In an abundance of caution, the Court will therefore address the merits of Defendants arguments regarding the public interest factors.

---

**5.** There has also been an amicus curiae brief submitted by the National Association of Home Builders (“NAHB”). In its brief, the NAHB either reargues issues that have already been decided by this Court, i.e. that the Listed Species are adequately protected under the current RPAs, or rehashes the arguments raised by Defendants. Specifically, the

## III. DISCUSSION

The parties do not dispute that Plaintiffs have been successful on the merits. In addition, as discussed *supra,* the law is clear that the balance of harms prong of the injunction analysis weighs in favor of the Listed Species. Accordingly, in deciding whether Plaintiffs are entitled to an injunction, the Court will address: (1) whether an injunction is necessary to prevent irreparable harm; and (2) Defendants’ arguments regarding the public interest prong. Finally, the Court will address the additional arguments raised by Defendants in their Memorandum opposing Plaintiffs’ Motion for a Permanent Injunction.[5]

### A. Irreparable Injury

■ In deciding whether an injunction is necessary to prevent irreparable harm, Courts generally look to whether plaintiff lacks an adequate remedy at law for the damages suffered. *MediaOne of Delaware, Inc. v. E & A Beepers and Cellulars,* 43 F.Supp.2d 1348, 1354 (S.D.Fla.1998). However, when addressing environmental harms, the Supreme Court has held that “environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e. irreparable.” *Amoco Production Co. v. Village of Gambell, AK,* 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Moreover, where injury to an endangered species is threatened, legal remedies are necessarily inade-

---

NAHB focuses much of its brief on the public interest factors. However, the NAHB’s concept of the public interest in the preservation of endangered species is too narrow, and transparently reveals their own, private interests. Accordingly, the Court concludes that the amicus brief raises no new issues, and is therefore given little weight by the Court.

quate. *See Weinberger v. Romero–Barcelo*, 456 U.S. 30, 314, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)(explaining that only injunctive relief can vindicate the objectives of the ESA when the existence of an endangered species is threatened); *Sierra Club v. Norton*, 207 F.Supp.2d 1310 (S.D.Ala.2002)(finding that the threatened destruction of the optimal habitat of an endangered species is clearly irreparable). Accordingly, in determining whether the irreparable injury prong has been satisfied, the Court considers whether environmental harm is likely to occur.

Plaintiffs ask the Court to take a step further, and find that the irreparable injury prong, much like the third and fourth prongs of the injunction analysis, is foreclosed in ESA cases. According to Plaintiffs, irreparable harm is presumed when the ESA has been violated. Pl. Mem. at 5. Defendants disagree, arguing that Plaintiffs must demonstrate irreparable harm in cases involving violations of the ESA. Def. Mem. at 4.

■ While the Court is inclined to agree with Plaintiffs [6], the facts of this case make it unnecessary to do so. A review of the record clearly demonstrates that, absent an injunction, environmental harm is likely to occur. Specifically, the 2003 BO contains the following conclusions:

"*Any habitat loss* will constitute a permanent reduction in the number of cotton mice in the Florida Keys and reduce the long-term conservation of Key–Largo cotton mice."

. . . . .

"*Any habitat loss* will constitute a permanent reduction in the land available in the Florida Keys for Key Largo woodrats, and generally reduce the long term number conservation for the remaining population."

. . . . .

"*Any occupied habitat loss* will generally reduce the viability of the remaining population [of the lower Keys marsh rabbit]. In addition, the proposed action will increase the human population of the Keys which will result in increases in feral and domestic cats, a primary threat to this species."

. . . . .

*Any habitat loss* will constitute a further, permanent reduction in the number of [Schaus swallowtail butterfly] . . . and generally reduce the overall viability for the remaining population.

. . . . .

*Any habitat loss* will constitute a further, permanent reduction in the population of [the Silver rice rat] . . . and reduce the overall viability for the remaining population.

FWS A.R. # 88 at 45 –48 (emphasis added). In addition, in a separate discussion

---

**6.** It does not appear that the Eleventh Circuit has addressed whether irreparable harm is presumed from violations of the ESA. However, district courts within this circuit, as well as other circuit courts, have concluded that violations of the ESA are *per se* irreparable. *See e.g. Loggerhead Turtle v. County Council of Volusia County, Florida*, 92 F.Supp.2d 1296 (M.D.Fla.2000) "any threatened harm [under the ESA] is *per se* irreparable harm" (emphasis in original); *Hawksbill Sea Turtle v. Federal Emergency Management Agency*, 126 F.3d 461 (3rd Cir.1997)(when faced with a request for injunctive relief under the ESA, a plaintiff need only show that a defendant has violated the act to be entitled to injunctive relief). Presuming irreparable harm is also consistent with the language and intent of the ESA. *See TVA*, 437 U.S. 153, 98 S.Ct. 2279.

of the status of the Key deer, FWS notes that:

> the contraction in range [due to habitat loss and fragmentation] has decreased the overall viability of the Key deer population .... *The main threat to the continued existence if the Key deer is the alteration of habitat caused by residential and commercial construction activities.*

FWS A.R. # 88 at 9 (emphasis added). Accordingly, Defendants' own administrative record clearly illustrates that any habitat loss or fragmentation jeopardizes the continued existence of the Listed Species.

Nevertheless, Defendants argue that an injunction is unnecessary because the continued implementation of the 2003 RPAs will adequately protect against irreparable harm during the remand period. Def. Mem. at 16. This argument is disingenuous. As this Court has already concluded in the May 29, 2005 Order,

> [I]n summation, the record reveals that the 1997 RPAs illegally relied on voluntary measures and actually affected only eight projects, out of the more than two thousand permitted to go forward *within the suitable habitat* of the Listed Species. In addition, the 1997 RPAs do not account for the cumulative or secondary effects of any of the projects. For these reasons, the Court finds that the 2003 RPAs, which merely re-adopt the 1997 RPAs, run counter to the evidence before FWS at the time the 2003 BO was issued and the 2003 RPAs proposed, do not protect against jeopardy, and are therefore invalid under the APA. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856.

(footnotes omitted)(emphasis in original). Thus, contrary to Defendants assertions, the continued implementation of the 2003 RPAs during the remand period will not prevent Plaintiffs from suffering irreparable harm.

As discussed *supra,* jeopardizing the existence of an endangered or threatened species through destruction of suitable habitat clearly constitutes irreparable harm. *See Norton,* 207 F.Supp.2d at 1340. As a result, regardless of whether violations of the ESA are *per se* irreparable, the Court concludes that an injunction is necessary to prevent irreparable harm.

## B. Public Interest

 As discussed *supra,* the traditional consideration of public interest factors has been foreclosed in cases involving violations of the ESA. However, even assuming Defendants are correct, and that the Court should consider the public interest factors in this case, the Court concludes that the public interest is best served by granting an injunction.

Defendants argue that the interests of the NAHB, should be "carefully considered" when addressing the public interest factors. Def. Mem. at 18. Accordingly, it appears that Defendants contend that the NAHB represents the public interest, and that their interests outweigh the other interests relating to the protection of endangered species. This argument is unsupported by the ESA and contrary to Congressional intent and Supreme Court precedent. *See generally TVA,* 437 U.S. 153, 98 S.Ct. 2279.

The NAHB is an association of private developers, and represents the interests of its members. See Amicus Brief at 1. The NAHB opposes Plaintiffs' Motion on the grounds that an injunction would disserve the public's interest in receiving flood in-

surance under the NFIA. *Id.* at 7. The NAHB's interpretation of the relevant public interest regarding violations of the ESA is too narrow.

As the Supreme Court held in *TVA,* "[f]rom the most narrow possible point of view, *it is in the best interests of mankind to minimize the losses of genetic variations.* The reason is simple: they are potential resources. They are keys to puzzles which we cannot solve, and may provide answers to questions which we have not yet learned to ask." 437 U.S. at 178, 98 S.Ct. 2279 (emphasis in original). Furthermore, "Congress has decided that any possible expense and inconvenience to the public cannot equal the potential loss from extinction." *Sierra Club v. Marsh,* 816 F.2d 1376, 1386 n. 13; *TVA,* 437 U.S. at 188, 98 S.Ct. 2279 ("Quite obviously, it would be difficult for a court to balance the loss of a sum certain-even $100 million-against a congressionally declared 'incalculable' value, even assuming we had the power to engage in such a weighing process, which we emphatically do not."). Finally, the public interest, as identified by Congress in passing the ESA, favors informed agency decision-making and the protection of endangered species. *Norton,* 207 F.Supp.2d at 1342. Accordingly, the Court is not persuaded that Defendants are correct in arguing that the interests represented by the NAHB should be "carefully considered" when addressing the public's interest associated with the protection of endangered species.

Defendants also contend that an injunction would disserve the public interest because it would cause financial hardship to some property owners in Monroe County by making it more expensive to obtain flood insurance for new construction within the suitable habitat of the Listed Species.

Def. Mem. at 19. Again, Defendants perception of the public interest analysis it too narrow. *See generally TVA,* 437 U.S. at 153, 98 S.Ct. 2279.

First, the Court notes that certain areas of the Florida Keys are included in the Coastal Barrier Resource System and therefore currently excluded from receiving flood insurance pursuant to the Coastal Barrier Resource Act. Pl. Mem. at 14. There is nothing in the record to indicate that exclusion of these areas from receiving federal flood insurance has caused the type of economic hardship or personal distress described by Defendants.

In addition, assuming Defendants are correct, and that an injunction would make it more expensive for landowners to obtain flood insurance within the suitable habitat of the Listed Species, such an outcome would not disserve the public interest. Instead, providing financial incentive for development outside of the suitable habitat of the Listed Species, fits squarely within the goals of the ESA. While the Court is sensitive to the interests of individuals who may be affected by an injunction, Congress has mandated that the protection of endangered species is to be given the highest of priorities. *TVA,* 437 U.S. at 174, 98 S.Ct. 2279. Therefore, the Court cannot conclude that raising the cost of development for some landowners in the Florida Keys outweighs the public's interest in the preservation of endangered species.

In addition, as Plaintiffs point out, and as Defendants fail to dispute, given the local ordinances which limit the amount of development in the Florida Keys, an injunction is not likely to have a large overall affect on development in the Florida Keys. *See* Monroe County Land Development Regulations, Chapter 9.5, § 9.5–120. Instead, the more likely outcome of an in-

junction would be a shift of development towards those areas that are not within the suitable habitat of the Listed Species.

In summation, even assuming the public interest factors have not been foreclosed in cases involving violations of the ESA, it is clear that "the public interest, as identified by Congress in passing ... the ESA, favors ... the protection of endangered species." *Norton,* 207 F.Supp.2d at 1342. Defendants' arguments regarding the public interest factors do nothing to overcome the public interest factors identified by Congress.

### D. Defendants Additional Arguments

Defendants raise additional arguments in support of their opposition to Plaintiffs' Motion for a Permanent Injunction. First, Defendants contend that entering an injunction in this case would exceed the Court's equitable power. Def. Mem. at 6. Next, Defendants argue that Plaintiffs' Motion should be denied because it is contrary to Congressional intent. *Id.* at 12. Finally, Defendants maintain that the Court should not enter an injunction because doing so would be inconsistent with section 7(d) of the ESA, 16 U.S.C. § 1536(d). *Id.* at 18.

### 1. Court's Power

According to Defendants, because FEMA lacks the discretion to limit the availability of flood insurance within an otherwise eligible community, the Court cannot prohibit FEMA from issuing new flood insurance policies within the suitable habitat of the Listed Species during the remand period Def. Mem. at 8. Plaintiffs

disagree, arguing: (1) that regardless of whether FEMA can or cannot limit the availability of flood insurance within an otherwise eligible community, FEMA has ample discretion under the NFIA to implement the NFIP in a manner consistent with the ESA; and (2) the Court has ample authority to limit the availability of flood insurance within the suitable habitat of the Listed Species until such time as Defendants have convinced the Court that they have complied with the requirements of the ESA and the APA.

The Court agrees with Plaintiffs on both issues. First, as discussed *infra,* this Court, and other courts, have concluded that FEMA has sufficient discretion to implement the NFIP in a manner consistent with the ESA.[7] Second, FEMA's discretion, or lack thereof, to curtail the availability of flood insurance within an otherwise eligible community does not limit the Court's ability to enjoin FEMA from issuing flood insurance to new developments within the suitable habitat of the Listed Species during the remand period.

a. FEMA has discretion to Implement the NFIP consistent with the requirements of the ESA.

■ In the 1994 Order, this Court held that:

FEMA does in fact have ample discretion to implement the NFIP in a way that is compatible with the ESA. In enacting the NFIA, Congress gave FEMA broad discretion to "issue such regulations as may be necessary to carry out the purpose of this Act." 42 U.S.C. § 4128(a). The NFIA also gives

---

**7.** The Supreme Court has consistently instructed that "statutes written in broad, sweeping language should be given broad, sweeping application," *Consumer Electronics Ass'n v. F.C.C.,* 347 F.3d 291, 298 (D.C.Cir. 2003).

FEMA broad discretion to establish specific criteria of eligibility for communities to participate in the NFIP. *Id.* § 4012(c). FEMA has done so, at 44 C.F.R. Part 60, Criteria for Land Management and Use. These federal regulations specifically set forth criteria for local land use regulations that, at a minimum, communities must adopt in order to participate in the NFIP.... In addition to adopting regulations setting criteria for land management and use, FEMA has also adopted regulations to implement the Council on Environmental Quality's (CEQ) regulations, 40 C.F.R. §§ 1500.1 et seq., which in turn implement the requirements of the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. FEMA's regulations, entitled "Environmental Considerations," provides "policy and procedures to enable [FEMA] officials to be informed of and to take into account environmental considerations when authorizing or approving major FEMA actions that significantly affect the environment of the United States." 44 C.F.R. § 10.1(a). FEMA's regulatory criteria, designed to determine whether its actions "significantly affect the environment," include FEMA's consideration of whether "an action will affect, in large measure, *wildlife populations and their*

*habitats...., or delicate or rare ecosystems, including . endangered species."* *Id.* § 10.8(b)(2)(v) (emphasis supplied); *see also* § 10.8(e)(5). FEMA's regulations also set forth FEMA's environmental policy: FEMA shall act with care to assure that, in carrying out its responsibility, *including ... flood insurance, it does so in a manner consistent with national environmental policies ....*

(emphasis in original). Accordingly, this Court has already concluded that the NFIA provides FEMA with sufficient discretion to meet the requirements of the ESA.[8]

Other courts have also held that FEMA has discretion to implement the NFIP in a manner consistent with the ESA. *Nat'l Wildlife Fed'n v. FEMA,* 345 F.Supp.2d 1151, 1173 (W.D.Wash.2004). In *National Wildlife,* the Court held that:

[although] FEMA has no discretion when it comes to the provision of flood insurance to persons in NFIP-eligible communities, it has discretion to act in a manner that could benefit [protected species] ... in mapping the floodplains, in developing and promulgating the minimum eligibility criteria, and in implementing the CRS [community rating

8. Plaintiffs argue that the 1994 Order collaterally estops Defendants from re-arguing that FEMA does not have the discretion under the NFIA to implement the NFIP in a manner consistent with the ESA. Defendants, disagree arguing that the 1994 Order and the instant Motion are part of the same proceeding, and therefore the law of the case doctrine applies. Both parties rely on *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). In *Arizona,* the Supreme Court held that, although the technical rules of preclusion were not strictly applicable, the need for certainty and finality in adjudicatory proceedings weighed against allowing the relitigation

of certain claims. Those same principles apply here. This case has gone through several stages of litigation since it was filed in 1990, one of which being the Court's conclusion in 1994 that FEMA had sufficient discretion to implement the NFIP in a manner consistent with the ESA. Accordingly, while the principals of preclusion are not strictly applicable to the instant proceeding, the need for finality after fifteen years of litigation weighs against relitigating whether the NFIA provides FEMA with adequate discretion to carry out the NFIP consistent with the requirements of the ESA. The Court has already held that FEMA has such discretion.

system]. Accordingly, the Court holds that FEMA's implementation of the NFIP, with the exception of the actual sale of flood insurance, is a discretionary "agency action" for the purposes of Section 7(a)(2) of the ESA.

*Id; see also American Rivers v. U.S. Army Corps of Engineers,* 271 F.Supp.2d 230, 252 (D.D.C.2003) (finding that the Flood Control Act provided the Secretary of the Army with sufficient discretion to consider its ESA obligations, and that "ESA compliance can come at the expense of other interests, including navigation and flood control given the Supreme Court's conclusion that the ESA reveal[ed] a conscious decision by Congress to give endangered species *priority over* the 'primary missions' of federal agencies")(internal quotations and citation omitted)(emphasis in original).

Accordingly, it is clear that, regardless of whether FEMA can limit the availability of flood insurance within an otherwise eligible community, FEMA has sufficient discretion within the framework of the NFIA to implement the NFIP in a manner consistent with the requirements of the ESA.[9] *See American Rivers,* 271 F.Supp.2d at 252 (holding that "with regard to ESA obligations, courts have found that if an agency has *any* statutory discretion over the action in question, that agency has the

authority, and thus the responsibility, to comply with the ESA.")(emphasis added). Therefore, it is not an abuse of discretion for the Court to enter an injunction in this case.

b. The Court is within its power to issue and injunction

■ Under section 11 of the ESA a court may, "enjoin any person, including the United States and any other governmental instrumentality or agency ... who is alleged to be in violation of any provision" of the ESA "or regulation issued under the authority thereof ...." 16 U.S.C. § 1540(g)(1)(A). "[T]here are no exemptions in the [ESA] for federal agencies...." *TVA,* 437 U.S. at 188, 98 S.Ct. 2279. Thus, the ESA clearly provides the Court with the ability to enter an injunction. The fact that FEMA may be unable to limit the availability of flood insurance within an otherwise eligible community is unrelated to the Court's ability to prevent Plaintiffs from suffering irreparable harm until such time as an adequate BO is prepared and sufficient RPAs in place.[10]

Injunctions have been entered pending the completion of adequate biological opinions in similar cases. For example, in *Thomas v. Peterson,* 753 F.2d 754, 764 (9th Cir.1985), the Ninth Circuit enjoined the Forest Service from constructing a road,

**9.** The Court notes that its conclusion that FEMA has sufficient discretion under the NFIA to implement the NFIP consistent with the requirements of the ESA was an essential holding of the 1994 Order. If FEMA had no discretion to meet the requirements of the ESA, there would be no point in requiring consultation. In other words, either FEMA must consult with FWS and develop reasonable and prudent alternatives that satisfy the requirements of the ESA or they should not consult at all. Requiring consultation, but then later holding that FEMA has no discre-

tion to administer the NFIP consistent with the requirements of the ESA, would render the consultation requirement meaningless.

**10.** The Court notes that FEMA is correct in arguing that reasonable and prudent alternatives are limited to actions that can be taken by the federal agency. However, as the Court has already concluded, there is nothing to prevent FEMA from administering the NFIP program in a manner consistent with the requirements of the ESA.

pending compliance with the ESA. There, the Court concluded that the Forest Service's failure to consult with FWS violated the procedural requirements of the ESA, and that "[g]iven a substantial procedural violation of the ESA in connection with a federal project, the remedy *must* be an injunction of the project pending compliance with the ESA." *Id.* (emphasis added).

Similarly, in *Greenpeace Foundation v. Mineta*, 122 F.Supp.2d 1123, 1137 (D.Hawai'i 2000), the court entered an injunction pending the completion of an adequate biological opinion. *Id.* In *Mineta*, the defendants prepared a biological opinion and implemented a plan to remove jeopardy to an endangered species based on the conclusions of the biological opinion. *Id.* The court determined that the biological opinion was inadequate as a matter of law. *Id.* The court further concluded that, because the plan implemented by the defendants to avoid jeopardy was based on an inadequate biological opinion, there was no assurance that the plan to avoid jeopardy would not harm the endangered species. *Id.* Defendants were therefore in violation of Section 7, and the court was compelled to enjoin the federal action. *Id.*

Here, much like in *Mineta*, Defendants have failed to prepare an adequate biological opinion. *See* May 29, 2005 Order. FEMA has an affirmative obligation under Section 7(a)(2) to insure that agency action will not jeopardize the continued existence of the Listed Species or adversely modify their habitat. In the absence of an adequate biological opinion, FEMA is unable to meet this affirmative obligation with respect to its administration of the NFIP in the Florida Keys. As a result, the procedural requirements of the ESA have not been met and "an injunction pending compliance must be the remedy." *Thomas,*

753 F.2d at 764. Defendants' violation of Section 7 thus compels the Court to enjoin FEMA from issuing flood insurance policies to new developments within the suitable habitat of the Listed Species until such time as an adequate biological opinion in completed, and sufficient RPAs in place.

2. Entering an Injunction is not Contrary to Congressional Intent

■ In *TVA*, the Supreme Court held that "[t]he purposes of the [ESA] included the conservation of the species and of the ecosystems upon which they depend, and *every agency of government is committed* to see that those purposes are carried out.... [T]he agencies of Government can no longer plead that they can do nothing about it. *They can, and they must. The law is clear.*" 437 U.S. at 184, 98 S.Ct. 2279(citations omitted) (emphasis in original).

Defendants contend that granting Plaintiffs' Motion would require FEMA to violate Congress' mandate that FEMA "shall make flood insurance available ...." Def. Mem. at 11. Thus, according to Defendants, regardless of the Court's power to enjoin agency actions under the ESA, the Court is limited in this case by the language and intent of the NFIA. *Id.* Even assuming Defendants' interpretation of the NFIA is correct, the Court is not persuaded that such an interpretation limits the Court's equitable powers. *See TVA*, 437 U.S. at 193–94, 98 S.Ct. 2279.

In *TVA*, the Supreme Court addressed whether the construction of a dam could be completed when doing so would jeopardize the existence of the snail darter, an endangered species. 437 U.S. at 194, 98 S.Ct. 2279. Defendants argued that the Court could not enjoin the construction of the

dam because Congress had specifically authorized and funded the dam's construction. *Id.*

The Supreme Court disagreed. While the Court did conclude that there was "an irreconcilable conflict between operation of the Tellico Dam and the explicit provisions of § 7 of the Endangered Species Act...", the Court concluded that the dam could not be completed because Congress had spoken in the clearest of words, giving "endangered species priority over the primary missions of federal agencies." *Id.* at 185, 98 S.Ct. 2279.

Similarly, Defendants in this case contend that the Court cannot override the express intent of Congress that FEMA "shall issue flood insurance." Def. Mem. at 12. For the same reasons as the defendants in *TVA* were unsuccessful, Defendants' arguments here are equally unsuccessful. Congress has clearly stated that the protection of endangered species is to be given priority over the primary missions of federal agencies. Thus, it is not within the Court's discretion to conclude that FEMA's administration of the NFIP in Monroe County outweighs society's interest in the protection of endangered species.

■ The Court notes that the injunction shall only remain in effect until the remand is complete and the Court determines that Defendants have complied with the May 29, 2005 Order, the ESA, and the APA. The Court further notes that FEMA is not required to implement a plan which prohibits the issuance of flood insurance to new developments within the suitable habitat of the Listed Species. Instead, Defendants are free to develop a conservation plan and reasonable and prudent alternatives in any manner they choose, so long as

their actions are consistent with this Court's Orders, the ESA and the APA. *The Court reiterates that FEMA is permitted to issue flood insurance within Monroe County outside the suitable habitat of the Listed Species. Should FEMA reach a different conclusion, such a result would be the product of FEMA's own narrow interpretation of the NFIA, and not because of this Court's Order.*

E. ESA Section 7(d)

Section 7(d) provides that:

after initiation of consultation required under subsection (a)(2) of this section, the Federal agency and the permit or license applicant shall not make any irreversible commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section.

16 U.S.C. § 1536(d). Section 7(d) was not part of the original ESA. *Nat'l Wilderness Inst. v. Corps of Engineers,* Civ. No. 010272, 2005 WL 691775 (D.D.C. March 23, 2005). Rather, it was added after the Supreme Court's decision in *TVA* to prevent Federal agencies from steam rolling activities in order to secure completion of projects regardless of the impacts on endangered species. *Id.*

According to Defendants, FEMA should be allowed to continue issuing new flood insurance policies within the suitable habitat of the Listed Species during the remand period because doing so would not violate ESA section 7(d). Defendants are wrong for two reasons. First, Section 7(d) does not excuse federal agencies from meeting the requirements of Section

7(a)(2). *See Conner v. Burford*, 848 F.2d 1441, 1455 n. 34 (9th Cir.1988)(finding that Section 7(d) does not amend Section 7(a)'s requirement of a comprehensive biological opinion). Second, even assuming that Section 7(d) provided the proper standard for an injunction, the current administration of the NFIP in the Florida Keys violates Section 7(d). As discussed in detail in the May 29, 2005 Order, habitat loss and fragmentation of the suitable habitat of the Listed Species continues under FEMA's current plan. Such destruction of suitable habitat may foreclose future options available to Defendants when issuing new RPAs. Therefore, the current administration of the NFIP in the Florida Keys violates Section 7(d) of the ESA.

## VII. CONCLUSION

Since this case was filed more than fifteen years ago, Defendants have repeatedly failed to adhere to the requirements of the ESA. Defendants' own documents illustrate that *any* additional habitat modification or fragmentation of the suitable habitat of the Listed Species further jeopardizes their existence. As a result, the failure to grant Plaintiffs' Motion would seriously diminish the Court's ability to provide Plaintiffs with meaningful and effective relief in this action. Accordingly, it is

ORDERED AND ADJUDGED that Plaintiffs' Motion for a Permanent Injunction (DE # ) is GRANTED. It is further

ORDERED AND ADJUDGED and based thereon that:

1) This Action is remanded to Defendants for consideration of the effects of the National Flood Insurance Program in Monroe County, Florida on the Listed Species.

2) Defendants shall submit a new biological opinion and their plan for compliance with the March 29, 2005 Order, and the ESA and APA, within nine months of the date of this Order.

3) The Court maintains jurisdiction until such time as Defendants demonstrate compliance with the March 29, 2005 Order.

4) The parties shall notify the Court upon completion of the remand and their intent to file additional memoranda.

5) FEMA is hereby enjoined from issuing flood insurance for new developments [11] in the suitable habitats of the Listed Species in Monroe County, Florida from the date of this Order until such time as the Court concludes that Defendants have complied with the March 20, 2005 Order, the ESA and the APA.

6) Suitable habitats are defined as those parcels previously deemed by FWS as suitable habitat for the Listed Species for purposes of implementation of the 2003 RPAs. FWS shall submit the List of parcels in the suitable habitat to the Court within twenty (20) days of the date of this Order.

7) Plaintiffs shall submit their application for costs and attorney's fees within thirty (30) days of the of the conclusion of the appeal period.

---

11. Defined as any residential or commercial development where construction of the structure has not yet begun as of the entry of this Order.