Emma Yaiza DIAZ; John A. Lanman; American Federation of Labor and Congress of Industrial Organizations; American Federation of State, County and Municipal Employees, AFL–CIO; Florida Public Employees Council 79, Afscme, AFL–CIO; and Service Employees International Union, Plaintiffs,

v.

Sue M. COBB, Secretary of State of Florida; Brenda Snipes, Broward County Supervisor of Elections; Jerry Holland, Duval County Supervisor of Elections; Lester Sola, Miami–Dade Supervisor of Elections; Bill Cowles, Orange County Supervisor of Elections; and Arthur Anderson, Palm Beach County Supervisor of Elections, Defendants.

No. 04–22572–CIV.

United States District Court,
S.D. Florida,
Miami Division.

June 20, 2006.

Michael Halberstam, Adam Skaggs, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Mary Jill Hanson, Hanson, Perry & Jensen, PA, West Palm Beach, FL, Judith A. Browne, Sheila Y. Thomas, Elizabeth Westfall, Advancement Project, Washington, DC, Jonathan P. Hiatt, AFL-CIO, Washington, DC, Manny Anon, Jr., Florida Public Employees Council 79, Tallahassee, FL, Judith A. Scott, John J. Sullivan, SEIU, Washington, DC, for Plaintiffs.

Peter V. Antonacci, Allen C. Windsor, GrayRobinson, PA, Tallahassee, FL, Burnadette Dorinda Norris-Weeks, Ft. Lauderdale, FL, Tracey Irwin Arpen, Jr., Ernst Dieter Mueller, Office of City Attorney, Jacksonville, FL, Jeffrey Paul Ehrlich, Oren Rosenthal, Dade County Attorney's Office, Miami, FL, Mike Cirullo, Orange County Attorney's Office, Fort Lauder-

dale, FL, Ronald Albert Labasky, Young Van Assenderp, PA, Tallahassee, FL, for Defendants.

### ORDER OF PARTIAL DISMISSAL RE-QUIRING MORE DEFINITE STATEMENT AS TO FEDERAL CLAIMS

JAMES LAWRENCE KING, District Judge.

This Cause is before the Court upon Defendants' Motion to Dismiss the Second Amended Complaint (DE # 150), filed May 16, 2006.[1] Oral Argument was held May 31, 2006.

### I. Factual Background

Individual Plaintiffs Diaz and Lanman registered to vote in the fall of 2004. Plaintiff Diaz was informed orally on October 6, 2004, and in writing two days later, that her application had been rejected for failure to check the box on the application affirming that she had not been adjudicated mentally incapacitated. Plaintiff Lanman alleges that he has received no communications from the Orange County Elections Supervisor concerning his application, but that county records indicate that his application was rejected for failure to check the boxes on the application affirming that he had not been convicted of a felony and had not been adjudicated mentally incapacitated.

The Organization Plaintiffs allege that several of their members' voter applications were improperly rejected in 2004, on the basis of failure to check one or more boxes.

### II. Procedural Background

On October 12, 2004, three weeks before the November 2, 2004, general election, Plaintiffs[2] filed their initial Complaint challenging the denial of their voter applications and seeking injunctive relief. Defendants Palm Beach County, the Secretary of State, Broward County, Miami–Dade County, and Orange County, filed separate Motions to Dismiss on October 19, 2004. Oral argument on the Motion for Preliminary Injunction was heard October 22, 2004. Since the issues raised, and the relief sought, could have seriously impacted the national (and state) election set a few weeks later, the Court addressed the issues on an extremely expedited basis. With great cooperation, from all lawyers on both sides, the Motions (filed daily) were responded to within a few days, hearings with oral argument were held promptly (every few days), and the injunctive aspect of the case reached timely.

On October 26, 2004, two weeks after the Case was filed, the Court entered an Order dismissing the complaint for lack of standing, without prejudice to file an amended complaint. Plaintiffs elected not to exercise their right to file an amended complaint, but sought appellate review by filing a Notice of Appeal the next day.

Eleventh months later, on September 28, 2005, the Eleventh Circuit Court of Appeals vacated this Court's dismissal (with leave to amend) on the issue of standing, noting that the Florida Legislature had changed the law pertaining to voter registration in Florida while the Case was on appeal, and directed the Plaintiffs to file an amended complaint

---

1. The Motion is joined by all Defendants except for Miami–Dade County Elections Supervisor Lester Sola, who filed a separate Motion for More Definite Statement (DE # 149) May 15, 2006. Plaintiffs responded to the Motion

to Dismiss May 19, 2006 (DE # 154); Defendants replied May 22, 2006 (DE # 155).

2. Not including Mr. Lanman, who was allowed to enter the Case pursuant to the Court's Order of May 11, 2006.

"taking into account the law as it presently exists."

Despite the clear language of the Opinion of the Eleventh Circuit, no action was taken to file an amended complaint or, by either side, to move the Case forward, for the ensuing five months. In spite of the fact that another election is set for September 5, 2006, nothing happened until March 10, 2006 when the Secretary of State filed a Motion (granted the same day) for status conference.

At the scheduling conference on March 27, 2006, the Court heard oral argument and granted, pursuant to the Appellate Mandate, Plaintiffs' *ore tenus* motion to amend the complaint. The Second Amended Complaint was filed on May 17, 2006.

The Second Amended Complaint alleges that Defendants' declination to register applicants who failed to complete their registration applications by checking boxes on the State-provided form, where such information is conveyed elsewhere on the form, violates the Materiality Provision of the Voting Rights Act (VRA) (Count I); that not registering people who failed to provide information on a state voter registration form while registering people who used a federally mandated form that did not request the same information violates the Uniformity Provision of the VRA (Count II); that not registering applicants who failed or will fail to check boxes seeking what Plaintiffs contend to be redundant information, on applications that were allegedly confusing and ambiguous, requiring applicants to undergo what Plaintiffs characterize as the equivalent of a literacy test, and further, not timely notifying applicants of omissions and/or failing to provide a grace period, all violate the Due Process Clause (Counts III & IV); that Defendants are maintaining and administering non-uniform methods and practices of administering elections in violation of the Equal Protection Clause (Count V); that the text accompanying the mental capacity checkbox constitutes a literacy test prohibited by the VRA (Count VI); and that the State's voter registration form violates the National Voter Registration Act (NVRA) by requiring duplicate information and/or information beyond the minimum "necessary to enable State election officials to assess the eligibility of the applicant" (Count VII).

On May 15, 2006, Miami–Dade Supervisor of Elections Lester Sola filed a Motion for More Definite Statement. All of the other Defendants filed a joint Motion to Dismiss the Second Amended Complaint the following day. On May 31, 2006, the Court held oral argument on Defendants' Motion to Dismiss.

### III. The Motion to Dismiss

Defendants move to dismiss Plaintiffs' Second Amended Complaint on the following grounds: 1) that Plaintiffs' request for class certification is inappropriate; 2) that Plaintiffs' Claims against the Secretary of State for 2004 are moot; 3) that Plaintiffs fail to state a claim under the VRA or the NVRA; and 4) that Plaintiffs fail to state a cognizable constitutional violation.

#### 1. Request for Class Certification

The question of whether a complaint should survive a motion to dismiss is entirely distinct from the question of whether a class should be certified. Plaintiffs have not at this time moved to certify a class. If and when they so move, the Court will consider the issue.

#### 2. 2004 Claims Against the Secretary of State

The Secretary of State seeks dismissal of Plaintiffs' 2004 Claims because the Eleventh Amendment bars recovery of even nominal damages and the completion of all

registration for voting in the already completed 2004 elections renders those issues moot. Plaintiffs respond, contending that since the individual Plaintiffs' applications were rejected under the state rules in effect in 2004, the demand that those applications now be processed presents a case and controversy not barred by the Eleventh Amendment.

It is the clear implication of the Eleventh Circuit Mandate that, leaving aside the issue of damages for past conduct, this Case must be decided on the basis of the changed (2005) election law and the voter registration policies now in effect. Moreover, Plaintiffs' case for injunctive relief with respect to the individual Plaintiffs' 2004 applications is weak at best.

■ "Generally, in order to be entitled to a permanent injunction, a plaintiff must show: (1) success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff will outweigh any threatened harm the injunction may do to defendant; and (4) granting the permanent injunction will not disserve the public interest." *Florida Key Deer v. Brown,* 386 F.Supp.2d 1281, 1284 (S.D.Fla.2005) (*citing Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir.2000)). Assuming success on the merits, the question with respect to the events of 2004 is whether the continuing non-registration of the individual Plaintiffs constitutes an irreparable harm. On the facts of this Case, it does not.

The individual Plaintiffs were not registered in time for the 2004 election and were therefore unable to vote in said election. No equitable relief can be fashioned to undo that harm, if harm it was. On the other hand, the registration deadlines have not yet passed for the upcoming elections. Individual Plaintiffs now know the importance of the check-boxes on the Florida voter-registration form; they can avoid the injury of being prevented from voting in the next election by simply re-registering. At oral argument, Plaintiffs advanced the theory that checking a superfluous box is like paying a poll tax, such that Plaintiffs should not be forced to check a superfluous box in order to be able to vote. This argument fails for two reasons. First, Plaintiffs may register by using the federally mandated national registration form. Second, the gravamen of the violations Plaintiffs seek to remedy in this Case is that the State's form and procedures are preventing them from voting, not that the form and procedures constitute an independent harm. Thus, as to those voters, such as individual Plaintiffs, who know that their applications were deemed incomplete and have an easy opportunity to correct them, equitable relief, particularly injunctive relief, is inappropriate. *See Florida Key Deer,* 386 F.Supp.2d at 1284; *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–12, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); 42 Am.Jur.2d Injunctions § 31 ("[A]n injunction is available as a remedy only if the injury is substantial, irreparable, and not adequately remediable at law. Equity will not interfere by injunction where the damages suffered by the complainant are so small as to make the case trivial."); 42 Am.Jur.2d Injunctions § 33 ("despite the threat of imminent and irreparable harm, an injunction will not be granted if it is not the least restrictive means of providing appropriate relief"); *see also Reliable Transfer Co. v. Blanchard,* 145 F.2d 551, 552 (5th Cir.1944) ("Courts of equity exercise discretionary power in the granting or withholding of their extraordinary remedies ... particularly applicable to injunction since that is the strong arm of equity.").

Given the Eleventh Amendment's restriction on suits against states and the Eleventh Circuit Mandate to consider Florida voter registration law as recently changed by the Florida Legislature, the

Court concludes that the ongoing technical harm Plaintiffs allege occurred in the 2004 election is presently neither irreparable nor substantial, and the Complaint therefore does not state a cause of action against the Defendant Secretary of State for conduct in 2004.

### 3. Plaintiffs Fail to State a Claim Under the VRA or the NVRA

Plaintiffs raise four statutory claims: a) that the information conveyed by checking or not checking the check-boxes is not material, such that denying applications on the basis of failure to check the boxes violates the Materiality Provision of the VRA; b) that considering voter registration forms incomplete for failure to answer questions not present on an alternate form violates the Uniformity Provision of the VRA; c) that the text accompanying the Mental Capacity Check-box is so confusing as to constitute a literacy test prohibited by the VRA; and d) that requiring duplicative information, which by reason of its duplication constitutes information beyond the minimum "necessary to enable State election officials to assess the eligibility of the applicant," violates the NVRA. For the reasons set forth below, each of these claims fails to state a cause of action.

### A. Voting Rights Act (VRA)

Plaintiffs submit that requiring voters to check all of the appropriate check-boxes on the Florida voter application is redundant and therefore violates the Materiality Provision of the Voting Rights Act (VRA) because the information requested is also conveyed by the voter when she signs the general certification of eligibility at the bottom of the form. Plaintiffs further allege that refusing to process State voter applications for failure to include informa-

tion not requested by the Federal form (which Florida is required to accept under the Help America Vote Act (HAVA)) violates the Uniformity Provision by imposing different requirements on voters, depending upon which form they choose to submit. Finally, Plaintiffs charge that the text accompanying the mental capacity checkbox is so confusing that it constitutes a literacy test or "other device" prohibited by the VRA.

### i. Materiality Provision

■ The VRA's Materiality Provision prohibits any person "acting under color of law" from "deny[ing] the right of any individual to vote in any election because of an error or omission on any ... application ... if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 42 U.S.C. § 1971(a)(2)(B).

Plaintiffs' Materiality Provision claim may be summarized as follows: By signing the oath on the bottom of the Florida application, the applicant affirms that he is "qualified to register as an elector under the Constitution and laws of the State of Florida," which qualifications are enumerated both on the top of the form and in the text of the check-boxes. Since those qualifications include 1) being a citizen; 2) not being a convicted felon whose rights have not been restored; and 3) not being currently adjudicated mentally incapacitated with respect to voting, so the Plaintiffs argue, rejecting applications for failure to check the check-boxes explicitly affirming those qualifications individually is to require information that is redundant and therefore immaterial, in violation of the VRA. Plaintiffs do not challenge the presence of the check-boxes under this provision,[3] which may serve a signaling func-

---

**3.** Indeed, the Materiality Provision prohibits denying the right to vote on the basis of an immaterial error or omission, but does not prohibit a state from requesting immaterial information.

tion, but rather the policy, now mandated by Florida statute, that requires applications to be rejected for failure to check the appropriate boxes.

Defendants, in addition to contending that failure to check the check-boxes is a material omission, argue that the Help America Vote Act (HAVA), which mandates the citizenship check-box and prescribes the procedure to follow in the event an application is incomplete, either preempts the earlier VRA-at least with respect to the citizenship check-box-or indicates that failing to check one or more check-boxes is not immaterial.

The question under the statute is whether the failure to check one or more check-boxes is "material in determining whether" a voter "is qualified under State law." In *Schwier v. Cox*, the court held that failure to provide a social security number was not a material omission under the VRA, even though it would prevent voter fraud, since a question forbidden by statute (in that case the Privacy Act) cannot be material. 412 F.Supp.2d 1266, 1276 (N.D.Ga. 2005), *affirmed* 439 F.3d 1285 (11th Cir. 2006). In this Case, by contrast, there is no statute specifically prohibiting the State from requesting the information at issue,[4] and in fact the questions track the statutory eligibility requirements for voting in Florida, which Plaintiffs do not challenge. The issue, then, is: a) whether the information conveyed by checking the check-boxes is duplicative of the information conveyed by signing the oath at the bottom of the application; b) if so, whether said duplication renders the failure to check a check-box an immaterial omission; and c) even if the failure to check a check-box

may be immaterial under the VRA, whether HAVA authorizes or compels Defendants' conduct.

**a. Checking a Check–Box is Not Duplicative of Signing the Oath**

The oath at the bottom of the current (2006)[5] Florida voting application reads as follows:

*I do solemnly swear (or affirm) that I will protect and defend the Constitution of the United States and the Constitution of the State of Florida, that I am qualified to register as an elector under the Constitution and laws of the State of Florida, and that all information provided in this application is true.*

Plaintiffs argue that signing next to the words "I am qualified to register as an elector under the Constitution and laws of the State of Florida" conveys all of the information sought by the three check-boxes. From a technical standpoint, since qualifications to vote in Florida include citizenship, non-felon status, and mental competence, the oath does encompass the *qualifications* beside the check-boxes. That is not to say, however, that the oath encompasses the *information* conveyed by the check-boxes. The check-boxes contain specific affirmations of specific qualifications, while the oath contains a general affirmation of eligibility. Thus, while the information conveyed by checking the check-boxes is that the applicant affirms that she is a citizen, has not been convicted of a felony, or has not been adjudicated mentally incompetent, the information conveyed by signing box 17 (the oath) is one of *general* eligibility to vote. Since the information conveyed by checking the

---

4. The issue of redundancy under the Materiality Provision only begs the question.

5. The 2004 application also includes the language: "I am a U.S. citizen. I am a legal resident of Florida." This makes for a more

plausible argument that the citizenship check-box is duplicative of the oath. Nonetheless, the argument that any such duplication renders the check-box immaterial is not compelling, particularly in light of HAVA.

check-boxes is different in nature from (albeit similar in content to) that conveyed by signing the oath, checking one or more check-boxes is not duplicative of signing the oath.

### b. The Check–Boxes Are Not Immaterial

Even if the check-boxes were duplicative of the oath, failing to check one or more boxes would not be an immaterial omission under the VRA. There are two types of non-material omissions possible under the VRA: 1) failure to provide information, such as race or social security number, that is not directly relevant to the question of eligibility; and 2) failure to follow needlessly technical instructions, such as the color of ink to use in filling out the form.

Since Florida law allows only U.S. citizens to vote, and only if they have not lost their right to vote by being convicted of a felony or being found mentally incompetent with respect to voting, the questions posed by the check-boxes on these three topics are material as a matter of law. The question then becomes whether a material question becomes immaterial due solely to its repetition. Leaving aside the hypothetical issue of an applicant's failure to re-answer a question that is asked twice in the same way, it is clear, as discussed above, that the information conveyed by check-boxes and the oath is not the same, even if it can be said that the general certification (the oath) encompasses, in a formal sense, the specific ones (the check-boxes).

### c. HAVA Governs the Processing of Incomplete Applications

Consistent with the canons of statutory construction that a court seeks to interpret two statutes not to conflict with each other,[6] and that a specific provision controls the general,[7] the Court endeavors to interpret the Materiality Provision of the VRA consistently with the requirements of and the procedures prescribed by HAVA. If they conflict, however, HAVA, as the later and also more specific provision, controls.

HAVA requires the national voter registration form to include the question "Are you a citizen of the United States of America?" next to 'yes' and 'no' check-boxes. 42 U.S.C. § 15483(b)(4)(A). HAVA also sets out the procedure to follow in case the applicant fails to answer this question, requiring the registrar to notify the applicant of the failure and provide her with an opportunity to make a timely correction "subject to State law." 42 U.S.C. § 15483(b)(4)(B). This reflects a Congressional determination that the question is material to a determination of eligibility,

---

**6.** *See Regional Rail Reorganization Act Cases,* 419 U.S. 102, 134, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) ("A new statute will not be read as wholly or even partially amending a prior one unless there exists a 'positive repugnancy' between the provisions of the new and those of the old that cannot be reconciled.") (*quoting In re Penn Central Transportation Co.,* 384 F.Supp. 895, 943 (Reg'l Rail Reorg. Ct.1974)); *Cf. Dodd v. United States,* 545 U.S. 353, 358, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005) ("we will not interpret a congressional statute in such a manner as to effectively nullify an entire section"); *Davis v. Michigan Department of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construc-

tion that the words of a statute must be read in their context and with a view to their place *in the overall statutory scheme.")* (emphasis added).

**7.** The Latin maxim is *lex specialis derogat legi generali.* This obvious principle is not often cited directly, but *see, e.g., Rodgers v. United States,* 185 U.S. 83, 87, 37 Ct.Cl. 552, 22 S.Ct. 582, 46 L.Ed. 816 (1902); *Kiobel v. Royal Dutch Petrolium Co.,* 2004 U.S. Dist. LEXIS 28813, at *42 (S.D.N.Y. March 12, 2004); *Basic Controlex Corp. v. Klockner Moeller Corp.,* 202 F.3d 450, 453 (1st Cir.2000). *See also Succession of Nora,* 2 La.Ann. 229, at *7 (1847); *PaineWebber, Inc. v. First Boston, Inc.,* 136 P.R. Dec. 541, 545 (1994).

and constitutes a specific Congressional direction to reject an application as incomplete for failure to check one of the boxes.

Thus, as to the citizenship check-boxes, HAVA provides strong support for the information provided by the answer being material under the VRA, and comes very close to affirmatively preempting any contrary provision.[8] As to the other checkboxes, while there is no direct preemption, HAVA indicates by analogy that checkboxes for bona fide voting requirements are permissible and that the information provided by checking those boxes is material, such that a state may consider forms on which the applicant failed to check one or more boxes incomplete.

### ii. Uniformity Provision

Plaintiffs argue that the Uniformity Provision of the VRA prohibits Florida from rejecting applications for failure to check the felon and mental capacity checkboxes, since Florida accepts (as it must) the national form that does not include those boxes. See 42 U.S.C. § 1973gg–4(a)(1) ("Each State shall accept and use the mail voter registration application form prescribed by the Federal Election Commission pursuant to section 1973gg–7(a)(2) of this title for the registration of voters in elections for Federal office."). Plaintiffs argue that discarding applications for not containing information requested on them, while accepting other applications that do not request the same information, violates the Uniformity Provision. Defendants counter that no one is being discriminated against because everyone has a choice of which form to fill out and the State requires whichever form the applicant chooses to submit to be filled out completely (except for optional sections) in order to be accepted. The question of how to frame the uniformity question (uniformity of information required or uniformity of procedure for processing forms) should not be addressed in a vacuum.

The Federal statutory scheme provides that states may design their own voter registration forms, requiring information as may be relevant to the states' specific qualification requirements. The statutes provide further, however, that in any event, all states must accept the national registration form. Thus, the statutory scheme envisions (and permits) the type of non-uniformity of which Plaintiffs complain. Moreover, the Uniformity Provision is intended to combat discrimination. Here, there is no allegation of discriminatory non-uniformity, only a theoretical difference based upon the Federal statutory requirement to accept the national form.[9]

---

8. The only reason that HAVA's preemption is not mechanical is that it refers specifically to the procedure to be followed in processing the national voter registration form. Nonetheless, the notion that Congress intended to prohibit using the same procedure with respect to the state form is implausible. Had Congress wished to create different rules for processing the different forms, it would have been explicit, as it was in creating different rules for jurisdictions covered under Section 5 of the VRA.

9. The argument that, although states are permitted to ask additional questions on their application forms, they may not insist on answers to those questions, is not persuasive. One suspects that the gravamen of Plaintiffs' non-uniformity allegation is actually the implicit suggestion that the integrity of the voter rolls is not compromised by applicants' failure to check one or more boxes where the applicant could have chosen to submit a form that did not include those boxes (essentially, a materiality argument). This argument must fail, however, on the same grounds as the materiality argument above. The Legislature has determined that certain information is material to determining applicants' eligibility. Notwithstanding that determination, Congress has instructed the State to accept the national registration form. Congress has not, however, forbidden the states from promulgating their own forms requiring more (material) information. The Court will not charge the State with admitting the immateriality of its requirements on the basis of following Federal law.

### iii. Mental Capacity Check–Box Language Not a Literacy Test

■ 42 U.S.C. § 1973aa(a) provides that "[n]o citizen shall be denied, because of his failure to comply with any test or device, the right to vote . . . ." Subsection (b) defines "test or device" to mean:

*[A]ny requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class.*

Plaintiffs argue that the text accompanying the mental capacity check-box is so complex that it functions as a literacy test. The text reads as follows:

*I affirm that I have not been adjudicated mentally incapacitated with respect to voting or, if I have, my competency has been restored.*

While the language may be somewhat complicated, it does not, as shown below, function as a literacy test, and as such, does not violate the VRA.

As the text of the statute ("test or device") indicates, a requirement may be prohibited even if it is not literally a "test." In *United States v. Louisiana*, 265 F.Supp. 703 (E.D.La.1966), for example, the court held that this provision of the VRA preempted a state law prohibiting illiterate voters from receiving assistance at the polls. *Id.* at 708.

In this Case, by contrast, applicants are free to request and receive (and others free to offer and provide) assistance in completing the application. This means that an applicant need not "demonstrate the ability to read, write, understand or interpret" anything, nor "demonstrate any educational achievement." 42 U.S.C. § 1973aa(b). Since the statute defines "test or device," and the application at issue in this Case does not fall within the definition, it matters not-under the statute-whether the language on the form may be poorly drafted or confusing.

### B. National Voter Registration Act (NVRA)

■ Plaintiffs claim that the National Voter Registration Act (NVRA)'s requirement that an application form "may require only such . . . information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," 42 U.S.C. § 1973gg–7(b)(1), prohibits the state from requiring check-boxes to be checked. Defendants counter that the citizenship check-box is required by HAVA, and that HAVA also prescribes the procedure for processing incomplete applications.

The relevant NVRA provision governs the content of the form, rather than, like the VRA's Materiality Provision, the ability of state and local officials to reject forms.[10] The next part of the statute provides that the form "shall include a statement that (A) specifies each eligibility requirement (including citizenship); (B) contains an attestation that the applicant meets each such requirement; and (C) requires the signature of the applicant, under penalty of perjury." 42 U.S.C. § 1973gg–7(b)(2). Read together with HAVA's requirement of a citizenship check-box, this directs states to design

---

**10.** The exact language, that the "form . . . may require only . . . ," describes the information requested (except for explicitly optional information) on the application form, rather than rules for acceptance or rejection of completed forms.

their forms much as Florida has done in this Case. In particular, the requirement that each eligibility requirement be spelled out, together with an attestation that the applicant meets *each* such requirement, and a check-box requirement for citizenship, along with restrictions on duplicative requirements, seems specifically to envision a check-box form.

Plaintiffs claim that, because the oath includes an affirmation of eligibility, the check-boxes violate the NVRA by requiring information beyond that necessary to determine the applicant's eligibility. Given the NVRA and HAVA's other requirements, however, any duplication should necessarily be attributed to the oath's containing not simply an affirmation that the information is true and correct, but also that the applicant is generally eligible to vote. If so, then Plaintiffs suffered no injury under the NVRA, since their applications were not rejected on the basis of anything having to do with the oath.

In short, the Florida form complies with the NVRA, which in relevant part, unlike the VRA, governs the makeup of the form, not acceptance or rejection of voter applications.

### 4. Plaintiffs' Constitutional Claims Must be Re–Pled

On May 15, 2006, Defendant Lester Sola, Miami–Dade County Supervisor of Elections, filed a Motion for More Definite Statement.[11] He alleges that the Second Amended Complaint is an impermissible 'shotgun' complaint and that the Court should require Plaintiffs to re-plead.

In consideration of Defendant Sola's Motion, the Court has carefully examined the Second Amended Complaint to ascertain whether it is "so vague and ambiguous

that a party cannot reasonably be required to frame a responsive pleading." Fed. R.Civ.P. 12(e).

Whatever the technical defects in the Complaint, Plaintiffs' *statutory* claims satisfy the requirements of the Federal Rules, namely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Moreover, Defendants were in fact able reasonably to frame their responsive pleadings. *See* Fed.R.Civ.P. 12(e).

█ Plaintiffs' *constitutional* claims, however, while short, are by no means plain. Their essence is, apparently, that the policies and procedures that are the subject of the statutory claims also, incidentally, violate the Constitution, namely the First, Fifth, and Fourteenth Amendments, in some way. If Plaintiffs' constitutional claims are opaque, however, Defendants' Motion to dismiss them is no clearer. This, as Defendant Sola points out in his Motion for More Definite Statement, is the very scenario that the Eleventh Circuit has in mind in admonishing district courts to require plaintiffs to re-plead 'shotgun' complaints, even in the absence of a motion for more definite statement. *See, e.g., Lumley v. City of Dade City,* 327 F.3d 1186, 1192 n. 13 (11th Cir. 2003). Constitutional issues should not be decided on the basis of such vague pleadings. *See Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir.2001). The Court therefore grants the Motion for More Definite Statement with respect to Plaintiffs' constitutional claims.

### IV. Conclusion

Accordingly, after a careful review of the Record, and the Court being otherwise fully advised, it is

---

11. On April 18, 2006, Defendant Sola filed a Motion for More Definite Statement, directed to Plaintiffs' First Amended Complaint, which Motion was mooted by the filing of Plaintiffs' Second Amended Complaint on May 11, 2006. The Court therefore considers only the Motion directed to Plaintiffs' Second Amended Complaint.

ORDERED and ADJUDGED that Counts **I, II, VI, and VII** be, and the same are hereby **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted. It is further

ORDERED and ADJUDGED that all Claims against the Secretary of State for conduct in 2004 be, and the same are hereby **DISMISSED** with prejudice for failure to state a cause of action. It is further

ORDERED and ADJUDGED that Defendant Sola's Motion for More Definite Statement (**DE # 149**) be, and the same is hereby **GRANTED** with respect to all remaining Counts, namely Counts III, IV, and V. Plaintiffs shall file their More Definite Statement within twenty (20) days. Defendants shall respond within ten (10) days of Plaintiffs' filing. The Court Reserves Ruling on the Motion to Dismiss with respect to these Counts.